UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI PAZ-ZAMORA, GILMA ZULETA DE PAZ,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY ARCHAMBEAULT, Field Office Direction, Dept. of Homeland Security, Immigration and Custom Enforcement ,<br><br>Defendant. | Case No.: 18cv2187-GPC(KSC)<br><br>**ORDER DENYING PETITIONER'S EMERGENCY MOTION FOR STAY AND DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICITON** |

On October 29, 2018, Petitioner Gilma Zuleta De Paz ("Petitioner" or "Zuleta") filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 along with an amended emergency motion for stay of removal pending petition for writ of habeas corpus.[1] (Dkt. Nos. 5, 6.) The government filed a response on the emergency motion for stay on October 29, 2018. (Dkt. No. 9.) Petitioner filed a late reply on November 1, 2018. (Dkt. No. 11.) A hearing was held on November, 2, 2018. (Dkt.

---

[1] Along with the amended petition for writ of habeas corpus, Petitioner Heidi Paz-Zamora filed a notice of voluntary dismissal of the petition. (Dkt. No. 7.)

1

No. 12.) Willard Bakeman, Esq. appeared on behalf of Petitioner and Samuel Bettwy, Esq. appeared on behalf of Respondent.

**Background**

Petitioner is a native and citizen of Guatemala. (Dkt. No. 9-1, Ex. 1[2].) On August 28, 2018, she attempted to enter the United States without authorization by crossing the United States-Mexico border in an area just east of the southbound pedestrian walkway at the San Ysidro, California port of entry. (Id., Ex. 9.) A Border Patrol Agent spotted her, and when he approached her, she tried to evade apprehension by running back into Mexico. (Id.) The Border Patrol Agent arrested Zuleta and had her transported to the Chula Vista Border Patrol station for processing to be prosecuted by the U.S. Attorney's Office for illegal entry under 8 U.S.C. § 1325. (Id., Exs. 3-4, 24-25.)

During the interview, she did not claim fear or persecution if she returned to Guatemala and when Zuleta was specifically asked whether she had any fear of returning to Guatemala, she refused to answer without an attorney present. (Id., Exs. 4, 13, 14.) She was read her Miranda rights, and she invoked her right to remain silent, (id., Ex. 8), and accepted the opportunity to speak with a Guatemalan consular representative. (Id., Exs. 3, 8, 16.)

On August 29, 2018, a criminal complaint was filed against Zuleta for violation of 8 U.S.C. § 1325(a)(2) for knowingly eluding examination and inspection by immigration officers in United States v. Zuleta, No. 18mj21231, Dkt. No. 1, (S.D. Cal.). On August 29, 2018, Zuleta was bonded out of criminal pretrial custody and released to the custody of U.S. Immigration and Customs Enforcement ("ICE"), incident to her expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1). (Dkt. No. 9-1, Ex. 26.)

On September 21, 2018, ICE obtained a temporary travel pass for Zuleta from the government of Guatemala. (Id., Ex. 36.) On the same day, Zuleta filed the instant

---

[2] The page numbers are based on the Respondent's page numbers on its exhibits.

2

18cv2187-GPC(KSC)

petition for writ of habeas corpus and sought an emergency stay of removal. (Dkt. No. 1.) On September 24, 2018, Petitioner withdrew her motion to stay removal.[3] (Dkt. No. 4.)

On October 3, 2018, the Asylum Officer conducted a two-hour credible fear interview. (Id., Exs. 37-43.) On October 4, 2018, the Asylum Officer made a negative credible fear determination and written analysis. (Id., Exs. 44-52.) On October 9, 2018, the Supervisor Asylum Officer approved the Asylum Officer's determination. (Id., Ex. 48.) On October 16, 2018, the Asylum Officer read and explained his negative credible fear determination to Zuleta in Spanish. (Id., Exs. 53-54.)

She sought review by the Immigration Judge ("IJ") of the negative credible fear determination. (Id., Ex. 53.); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42(d). On October 17, 2018, the Asylum Officer's decision was referred to an IJ for review. (Id., Exs. 54-56.) On October 19, 2018, IJ Olga Attia conducted a review of the negative credible fear determination and heard Zuleta's testimony. (Id., Ex. 57.) IJ Attia affirmed the Asylum Officer's determination and returned the case to ICE for removal. (Id.)

The amended emergency motion for stay of removal states that Zuleta is set to be removed on October 30, 2018. (Dkt. No. 6 at 1.) According to Respondent's counsel, ICE agreed to postpone the removal Zuleta until November 6, 2018, to allow the Court an opportunity to rule on Zuleta's motion to stay removal. (Dkt. No. 9 at 5.)

/ / / /

/ / / /

/ / / /

---

[3] According to counsel for Respondent, in her initial petition, Zuleta alleged that ICE had refused to afford her a credible fear determination before a USCIS Asylum Officer. (Dkt. No. 9 at 3.) Respondent's counsel immediately contacted the appropriate ICE contacts and learned that there was no record that Zuleta or her attorney had ever asserted a fear of persecution or fear of returning to Guatemala or expressed a desire to apply for asylum. (Id.) However, based on the allegations in the habeas petition, ICE referred Zuleta to USCIS for a credible fear interview. (Id.)

3

18cv2187-GPC(KSC)

**Discussion**

**A. Motion to Stay Removal Pending Ruling on Habeas Petition**

The traditional stay factors apply to a motion to stay an alien's removal pending judicial review and include "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (noting "substantial overlap" between factors governing preliminary injunctions under Winter[4] and stays). The first two factors are the most important. Id. Once the first two factors are met, the third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party. Id. at 435. "There is always a public interest in prompt execution of removal orders." Id. at 436. If Petitioner fails to demonstrate the threshold issue of likelihood of success on the merits, the court does not need to consider the other factors. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (addressing Winter factors for preliminary injunction).

**B. Likelihood of Success on the Merits**

The government solely argues that Petitioner will not likely succeed on the merits because the Court lacks jurisdiction over the expedited removal order and the negative credible fear determination and Petitioner also fails to state a claim. In reply, Petitioner does not address the government's arguments on the Court's subject matter jurisdiction or substantively challenge whether she has failed to state a claim.

---

[4] Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008).

Except under certain limited exceptions under 8 U.S.C. § 1252(e), judicial review of a removal order is explicitly barred by statute. See 8 U.S.C. § 1252(a)(2)(A)(i).[5] Under § 1252(e), habeas corpus review of an expedited removal order is limited to determining (1) "whether the petition is an alien"; (2) "whether the petitioner was ordered removed under such section" and (3) "whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, [or is a refugee or has been granted non-terminated asylum]." 8 U.S.C. § 1252(e)(2); Garcia de Rincon v. Dep't of Homeland Sec., 539 F.3d 1133, 1139 (9th Cir. 2008).

Here, Petitioner does not claim that the Court may review her expedited removal order under any of the limited exceptions. Instead, Petitioner argues that the Court has jurisdiction because she alleges a due process violation by the conclusion reached by Asylum Officer. However, she fails to support her argument with legal authority and cases have held a court's jurisdiction to review an expedited removal order is limited to those under § 1252(e). See Castro v. United States Dep't of Homeland Sec., 835 F.3d 422, (3d Cir. 2016) ("§ 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute.") Moreover, it appears she is challenging the evidentiary sufficiency of her negative credible fear determination but the Court is barred from reweighing the evidence in a credible fear determination. See 8 U.S.C. § 1252(a)(2)(A)(iii); Rais v. Holder, 768 F.3d 453, 462 n. 17 (6th Cir. 2014) ("[A] petitioner cannot create jurisdiction by alleging

---

[5] Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review--
(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of [expedited] removal pursuant to section 1225(b)(1) of this title . . .
8 U.S.C. § 1252(a)(2)(A)(i)

nothing more than a challenge to the [administrative agency's] discretionary and fact-finding exercises cloaked as a question of law.") (internal quotation marks omitted).

Therefore, the Court concludes it lacks jurisdiction to consider her claim. See Thuraissigiam v. United States Dep't of Homeland Sec., 287 F. Supp. 3d 1077, 1082 (S.D. Cal. 2018) ("the Court follows the clear precedent set forth by the Ninth Circuit and its sister circuits and concludes that it does not have subject matter jurisdiction to hear Petitioner's claims challenging his removal order.") (citing Rodaz v. Lynch, 656 Fed. App'x. 860, 861 (9th Cir. 2016) ("To the extent [petitioner] challenges the underlying 2010 expedited removal order, we lack jurisdiction to consider this collateral attack.")).

Furthermore, the statute provides that "no court shall have jurisdiction to review . . . (iii) the application of such section to individual aliens, including the [credible fear] determination made under section 1225(b)(1)(B) of this title . . . ." 8 U.S.C. § 1252(a)(2)(iii); Castro v. United States Dep't of Homeland Security, 163 F. Supp. 3d 157, 165-68 (E.D. Pa. 2016) (district court lacks jurisdiction to consider credible fear determination). If the Asylum Officer, and upon review, the IJ both determine that credible fear has not been established, the alien is ordered removed from the United States pursuant to the expedited removal order. 8 U.S.C. § 1225(b)(1)(B)(iii). The alien is not entitled to any further review of the negative credible fear determination from either the Board of Immigration Appeals ("BIA") or federal courts. See 8 U.S.C. § 1252(a)(2)(A)(iii); 8 C.F.R. § 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.").

Therefore, the Court concludes it does not have subject matter jurisdiction to consider Petitioner's expedited removal order and her negative credible fear determination, and consequently, Petitioner has failed to demonstrate a likelihood of success on the merits.

Lastly, Respondent additionally argues that Petitioner has failed to state a claim under 28 U.S.C. § 2241.

6

18cv2187-GPC(KSC)

Under 28 U.S.C. § 2241, the district courts may grant writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

Here, the Petition alleges a due process violation for Respondent's failure to recognize a particular social group, "married women in Guatemala who are unable to leave their relationship", in contravention to the ruling in Matter of A-R-C-G-, 26 I. & N. Dec. 388 (BIA 2014). Because the Attorney General overruled Matter of A-R-C-G- in Matter of A-B-, 27 I. & N. Dec. 316 (2018) on June 11, 2018, Petitioner argues that Court should "uphold" the decision in Matter of A-R-C-G- and order her another credible fear interview. (Dkt. No. 5 at 3.) In her reply, Petitioner argues, for the first time, that although there is no case law that spousal rape is a ground for granting a credible fear interview, spousal rape should be an "even more narrowly defined subgroup" than what was articulated in Matter of A-R-C-G-.

To be eligible for asylum, an applicant must demonstrate she is a member of a "particular social group" and that group is composed of members who "share a common immutable characteristic", that must be "defined with particularity" and must be "socially distinct within the society in question." Paloka v. Holder, 762 F.3d 191, 195-96 (2d Cir. 2014) (citing In re M–E–V–G–, 26 I. & N. Dec. 227, 237 (BIA 2014)). In Matter of A-R-C-G-, the BIA concluded "married women in Guatemala who are unable to leave their relationship" satisfies membership in a particular social group for asylum purposes. Matter of A-R-C-G-, 26 I&N Dec. 388 (BIA 2014). This ruling was overruled by the Attorney General on June 11, 2018 in the case of Matter of A-B-, 27 I&N Dec. 316 (2018).

Despite the recent Attorney General ruling, the Asylum Officer in Petitioner's case, acknowledged Petitioner's proposed particular social group, "Guatemalan women viewed as property by virtue of their position within a domestic relationship." (Dkt. No. 9-1, Ex. 50). In considering her particular social group, and the facts as provided by Petitioner, the Asylum Officer concluded she could not "establish at a full hearing that

she was harmed due to her membership in the proposed particular social group." (Dkt. No. 9-1, Ex. 51.)

Respondent explains that the Department of Homeland Security has applied the "viewed as property" standard even before the BIA's ruling in Matter of A-R-C-G-, and continues to apply it even after the Attorney General rescinded it. See e.g., Restrepo-Perez v. Session, 719 Fed. App'x 654 (9th Cir. 2018) ("Board concluded that its decision in A-R-C-G- was not a fundamental change in the law").

Accordingly, because the Asylum Officer applied the definition of a particular social group proposed by Petitioner, she fails to state a claim for a due process violation. Petitioner's new argument, that spousal rape, itself, should be considered a "particular social [sub]group" is not supported by case law and since the Asylum Officer considered the broader "Guatemalan women viewed as property by virtue of their position within a domestic relationship", her subgroup would have been considered by the Asylum Officer. Moreover, Petitioner concedes she did not propose this particular social group to the Asylum Officer and does not provide any legal authority for the Court to exercise jurisdiction over the issue.

Because Petitioner has failed to demonstrate a likelihood of success on the merits, the Court DENIES Petitioner's amended emergency motion for stay. See Garcia, 786 F.3d at 740 (if threshold factor of likelihood of success on the merits is not met, court need not consider the other factors).

**Conclusion**

Based on the reasoning above, the Court DENIES Petitioner's amended emergency motion for stay and DISMISSES the case for lack of subject matter jurisdiction. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.")

IT IS SO ORDERED.

Dated: November 5, 2018

_____
Hon. Gonzalo P. Curiel
United States District Judge